**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**KOBE BUNNELL,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 1:25-CV-16 (KLEEH)**

**WILLIAM REED, *former police officer for the City of Clarksburg,***

**Defendant.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT [ECF NO. 56]**

---

Pending before the Court is *Defendant William Reed's Motion to Dismiss the Third Amended Complaint*. ECF No. 56. For the reasons discussed herein, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I. PROCEDURAL HISTORY

On February 23, 2026, Kobe Bunnell ("Bunnell" or "Plaintiff") filed the *Third Amended Complaint* against Defendant William Reed ("Defendant Reed" or "Defendant"), a former sergeant for the Clarksburg Police Department. ECF No. 53. Specifically, Counts One and Two are brought under 42 U.S.C. § 1983 and allege (1) False Arrest and (2) Excessive Force. Count Three is brought under West Virginia common law, alleging Battery and Assault. Id.

On March 9, 2026, Defendant Reed moved to dismiss Counts One and Two of the Third Amended Complaint based on qualified immunity.

ECF Nos. 56, 57. Furthermore, Defendant moved to dismiss Count Three under West Virginia Code § 29-12A-5(b) statutory immunity and common law privilege. Id. On March 23, 2026, Plaintiff Bunnell filed his Memorandum in Opposition of Defendant's Motion to Dismiss [ECF No. 59], and Defendant Reed filed his reply in support of dismissal on March 30, 2026 [ECF No. 60].

Defendant Reed previously moved to dismiss the Second Amended Complaint on September 15, 2025 [ECF No. 35]. The Third Amended Complaint is identical to the Second Amended Complaint but was filed to designate Bunnell as Plaintiff because he reached the age of majority. See ECF Nos. 35, 53, and ECF No. 57 at p. 1.[1]

## II. FACTUAL ALLEGATIONS

In the Third Amended Complaint, Plaintiff alleges that on October 16, 2021, he was dropped off at Robert C. Byrd High School ("RCB") by his mother Valerie Nicholas to watch his girlfriend compete in a volleyball competition. ECF No. 53, Third Am. Compl. at ¶ 8. Plaintiff was thirteen years old at the time. Id. at ¶ 7. Ms. Nicholas dropped Plaintiff off at approximately 7:45 p.m. right past the driveway of a home on RCB property, which is owned by Harrison County Board of Education and reserved for the Prevention Resource Officer ("PRO"). Id. at ¶¶ 10-11. Plaintiff allegedly had arranged for his mother to pick him up at the conclusion of the

[1] Defendant Reed's Motion to Dismiss the Second Amended Complaint [ECF No. 35] is **DENIED AS MOOT.**

volleyball tournament but discovered that the tournament was already over when he entered the high school. Id. at ¶¶ 9, 13. Plaintiff exited RCB to call his mother to come pick him up. Id. at ¶¶ 14.

While walking through the RCB parking lot, a car approached Plaintiff, with "bright, white lights directly on him." Id. at ¶ 15. Plaintiff alleges he suffers from astigmatism and Visual Snow Syndrome, which causes "persistent visual disturbances, often described as seeing static or snow all the time." Id. at ¶ 16. These conditions caused Plaintiff to believe the vehicle was a truck, but it was a police cruiser. Id. at ¶¶ 17, 32.

Defendant Reed, who did not identify himself at the time, was driving the vehicle, and instructed Plaintiff to "get over here" in an allegedly "aggressive tone." Id. at ¶¶ 18-20. Defendant was a Sergeant for the City of Clarksburg Police Department at the time of the incident. Id. at ¶¶ 3, 20. Plaintiff approached the vehicle, and Defendant accused him of "being around his cars." Id. at ¶ 19. Defendant Reed allegedly lived at the home reserved for the PRO on RCB property near where Plaintiff had been dropped off. Id. at ¶¶ 21, 23. Plaintiff denied this accusation and "asked what [Defendant] meant." Id. at ¶ 22. Defendant allegedly stated that his sons had "seen a kid in a black hoodie messing with his cars." Plaintiff was wearing a hoodie but told Defendant Reed that his mother had just dropped him off. Id. at ¶ 24.

Then, Defendant exited his vehicle, opened the back door, and "ordered Plaintiff to get in." Id. at ¶¶ 25-26. Plaintiff did not enter the car. Id. at ¶ 26. Defendant Reed then "grabbed Plaintiff by the arm, tackled him to the ground, put Kobe in a headlock, and la[id] on top of [him]." Id. at ¶ 27. Plaintiff alleges that he "struggled to breathe" so he asked Defendant Reed to "loosen his grip" and in response, Defendant "tightened the head lock" and solicited two bystanders to help him restrain Plaintiff. Id. at ¶¶ 29-30. At the time, Defendant Reed was 6'2" and over 200 pounds and Plaintiff Bunnell was 5'10" and 110 pounds. Id. at ¶ 28. Defendant then handcuffed Plaintiff and put him in the back of the police cruiser. Id. at ¶ 32.

Plaintiff was ultimately transferred to the Clarksburg police station, where Defendant Reed allegedly falsely accused Plaintiff of attempting to hit him. Id. at ¶¶ 33-34. Plaintiff was released to his mother that evening. Id. at ¶ 39. Ms. Nicholas and Plaintiff were told that he would be charged with trespassing and obstructing a law enforcement officer; however, he was never charged. Id. at ¶¶ 40-41. As a result of the incident, Plaintiff suffered cuts, scratches, and bruises on his knees, shoulders, upper and lower arms, elbows, and back, as well as marks on his wrists from the handcuffs. Id. at ¶¶ 32, 42.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citations omitted).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Dismissal is appropriate only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of

facts which could be proved in support of his claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969) (citation omitted).

**B. Qualified Immunity**

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). It "may be invoked by a government official sued in his personal, or individual, capacity." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006) (citation omitted). The protection extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An officer, generally, is protected by qualified immunity if his "actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted).

The test to determine whether an officer is entitled to qualified immunity is two-fold: the Court must determine "(1) whether a constitutional violation occurred; and (2) whether the

right was clearly established at the time of the violation[.]" Jones v. City of Martinsburg, 961 F.3d 661, 667 (4th Cir. 2020) (citation omitted). The United States Court of Appeals for the Fourth Circuit applies a "split burden of proof for the qualified-immunity defense. The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." Stanton v. Elliott, 25 F.4th 227, 233 (4th Cir. 2022) (citation omitted). The Court can address either prong first. Pearson, 555 U.S. at 236.

"For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (quotation marks and citation omitted). "[A] right is only clearly established if it has a sufficiently clear foundation in then-existing precedent." Thurston v. Frye, 99 F.4th 665, 678 (4th Cir. 2024) (citations and internal quotation marks omitted). The "dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (citation omitted). As the Fourth Circuit has recently explained, the "crucial question is whether every reasonable officer would know this action in this situation was unlawful." Wells v. Fuentes, 126 F.4th 882, 890 (4th Cir. 2025) (citation omitted and emphasis modified).

To determine whether a right was clearly established, the Court looks to cases from the Supreme Court and the Fourth Circuit. See Thompson v. Commonwealth of Va., 878 F.3d 89, 109 (4th Cir. 2017) (citation omitted). In the absence of on-point, binding authority, courts should also consider whether "the right was clearly established based on general constitutional principles or a consensus of persuasive authority." Booker v. S.C. Dep't. of Corr., 855 F.3d 533, 543 (4th Cir. 2017). The Supreme Court has warned against "defining a right at too high a level of generality." Ray v. Roane, 948 F.3d 222, 229 (4th Cir. 2020) (citation omitted). It has "stressed the need to 'identify a case' or a 'body of relevant case law' where 'an officer acting under similar circumstances. . .was held to have violated the [Constitution]." Rambert v. City of Greenville, 107 F.4th 388, 402 (4th Cir. 2024) (citing District of Columbia v. Wesby, 583 U.S. 48, 64 (2018), and White v. Pauly, 580 U.S. 73, 79 (2017)). The right must be defined "in light of the specific context of the case, not as a broad general proposition." Younger v. Crowder, 79 F.4th 373, 385 (4th Cir. 2023) (citations omitted).

## IV. ARGUMENT

### A. Defendant is entitled to qualified immunity for Plaintiff's False Arrest claim in Count One because he had probable cause to detain Plaintiff Bunnell.

Defendant's Motion to Dismiss is **GRANTED** as to Count One because Plaintiff Bunnell's refusal to comply with Defendant

Reed's order to enter his police cruiser constitutes probable cause for arrest, entitling Defendant to qualified immunity. ECF No. 53 at ¶ 26. Under the Fourth Amendment, every search or seizure must be reasonable, and a search or seizure is, generally, unreasonable unless it is based upon probable cause and executed pursuant to a warrant. U.S. CONST. Amend. IV. To plausibly allege "false arrest," a plaintiff must allege sufficient factual content showing he was arrested without probable cause. Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). Probable cause is determined "from the totality of the circumstances known to the officer at the time of the arrest," and "need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." Id. See United States v. Dickerson, 27 F. App'x 236, 242 (4th Cir. 2001) The Fourth Circuit applies a two-factor approach to determine whether probable cause exists: (1) "the suspect's conduct as known to the officer, and (2) "the contours of the offense thought to be committed by that conduct." Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) (citations omitted).

The Supreme Court of the United States has further held that warrantless seizures are "per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is the investigative stop, which is

also referred to as a Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). A Terry stop has been held to be constitutional when the officer's action is supported by an articulable, reasonable suspicion that the person seized had engaged in criminal activity. United States v. Sokolov, 490 U.S. 1, 7 (1989). A brief detention for investigative purposes is reasonable if an officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry, 392 U.S. at 30; see also Turmon v. Jordan, 405 F.3d 202, 205 (4th Cir. 2005).

Reasonable suspicion "defies precise definition." United States v. McCoy, 513 F.3d 405, 411 (4th Cir. 2008). To determine whether reasonable suspicion exists, courts consider "the 'totality of the circumstances' to determine if the officer had a 'particularized and objective basis' for believing that the detained suspect might be armed and dangerous." United States v. George, 732 F.3d 296, 299 (4th Cir. 2013), cert. denied, 134 S.Ct. 1530 (2014) (citations omitted). "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior on the suspect." Id. (Citing Illinois v. Wardlow, 528 U.S. 119, 124 (2000)). Multiple factors may together "create a reasonable suspicion even where each factor, taken alone, would be

insufficient." Id. at 300 (citing United States v. Branch, 537 F.3d 328, 339 (4th Cir. 2008)).

Reasonable suspicion can be derived from information given by a third party, so long as it has "enough indicia of reliability" to justify a stop. Adams v. Williams, 407 U.S. 143, 147 (1972). Reasonable suspicion can arise "from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990). When evaluating the reliability of third-party information, the Fourth Circuit looks to three factors: (1) the informant's "proximity to the reported activity," (2) "whether the informant reported to the police in public," and (3) "whether the officer had the opportunity to observe the informant's credibility and demeanor." U.S. v. Mitchell, (quoting United States v. Griffin, 589 F.3d 148, 152-153 (4th Cir. 2009)). Additionally, "where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." U.S. v. Perkins, 363 F.3d 317, 323 (4th Cir. 2004). One overarching consideration is whether the informant will be able to be held accountable by the officer for providing false information. Griffin, 589 F.3d at 152.

In determining whether probable cause existed, this Court must examine whether Plaintiff's conduct matched the "contours of

the offense." Thus, West Virginia state law governs whether obstruction of an officer occurred.[2] Under West Virginia Code § 61-5-17(a), a person is guilty of obstructing an officer if he "by threats, menaces, acts, or otherwise forcibly or illegally hinders, or obstructs, or attempts to hinder or obstruct a law-enforcement officer." W. Va. Code § 61-5-17(a) (2025). Obstruction of an officer "may be found when a person refuses to comply with an officer's orders." Hupp v. Cook, 931 F.3d 307, 319 (4th Cir. 2019); See State v. Lowery, No. 17-0210, 2018 WL 2193241 (W. Va. May 14, 2018) (finding that an officer had probable cause to arrest the defendant for obstruction during a Terry frisk when the defendant refused multiple orders to stand up). This offense may occur even if the actor only refuses one order. State v. Cox, No. 20-0227, 2021 WL 195295 (W. Va. Jan. 20, 2021) (unpublished) (holding that sufficient evidence to convict for obstruction of an officer existed during an investigative stop when the petitioner was detained after refusing one order to stop walking away from the officer).

[2] The trespassing charges will not be addressed, as Plaintiff was on public property when this incident occurred, so Defendant Reed could not have witnessed him trespassing. ECF No. 1, Compl. at ¶ 15. Under West Virginia law, "[a] municipal police officer has no authority, at common law or by statute, to make a warrantless arrest for the misdemeanor of a person who does not commit such an offense in his presence." Simon v. W. Va. Dep't of Motor Vehicles, 382 S.E.2d 320, 321 (W. Va. 1989) (quoting Syl. Pt. 3, State v. Thomas, 203 S.E.2d 445 (1974)).

**1. Reasonable Suspicion**

The first inquiry this Court must make is whether Defendant Reed had reasonable suspicion that justified an investigative stop. Defendant Reed was informed of the alleged conduct of Plaintiff Bunnell by his sons, who had "seen a kid in a black hoodie messing with his cars." ECF No. 53, Third Am. Compl. at ¶ 23. Especially under the relaxed reliability standard for reasonable suspicion, the tip from Reed's sons meets the requirements. Although there is no specific fact stating that Reed's sons were at the scene of the incident, the statement that they saw someone bothering Reed's cars implies that they were eyewitnesses. Id. Although there are no facts to suggest that Defendant Reed's sons reported the suspicious activity in public, Defendant Reed had an opportunity to deduce the credibility of their statement since they are known to him. Furthermore, the sons would be able to be found and held accountable if any false information was provided, as sons of an officer. Despite the factual uncertainty about the sons' proximity to this incident when the tip was made, the totality of the circumstances justifies Defendant Reed in having reasonable suspicion, given that the tip was made by an immediate family member living in his home. Since there is reasonable suspicion, Defendant Reed did not violate any of Plaintiff Bunnell's rights in performing an investigative stop.

**2. Probable Cause**

Next, the Court must determine whether Defendant Reed had probable cause to detain Plaintiff Bunnell. First this Court must look to the Plaintiff's conduct that is "known" to the officer. The relevant conduct here is Plaintiff's refusal to enter Defendant Reed's police cruiser when asked to do so.[3] ECF No. 53, Third Am. Compl. at ¶ 26. Next, this conduct must be compared to the contours of the offense, which in this case is obstruction of an officer. As in State v. Cox, Plaintiff Bunnell did not comply with Defendant Reed's order to get in his police cruiser, giving Defendant Reed probable cause to arrest him. The Plaintiff's assertion that Defendant Reed's failure to charge him with a crime is indicative of a lack of probable cause is inapplicable here, as probable cause does not require information sufficient to convict. ECF No. 59, Plaintiff's Response at p.4.

**3. Qualified Immunity**

Because Defendant Reed had probable cause to arrest Plaintiff Bunnell for obstruction, Defendant Reed is entitled to qualified immunity for Plaintiff's false arrest claims. Thus, Count One of

---

[3] Defendant Reed's allegation in his Motion to Dismiss that Plaintiff Bunnell attempted to flee during arrest will not be considered as the factual allegations of the Complaint must be taken as true on a motion to dismiss, and an attempt to flee would not change the outcome of the analysis of Plaintiff's false arrest claim. ECF No. 57, Def's Motion to Dismiss at p. 8.

the Third Amended Complaint is **DISMISSED** for failure to state a claim upon which relief can be granted.

**B. Defendant Reed is not entitled to qualified immunity for the Excessive Force claims in Count Two because all Graham factors favor Plaintiff Bunnell.**

The Defendant's Motion to Dismiss as to Count Two is **DENIED** because under the Graham factors he is not entitled to qualified immunity and Plaintiff has sufficiently plead a claim of Excessive Force under 42 U.S.C. § 1983. Under the Fourth Amendment's "reasonableness" analysis, force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. Graham v. Connor, 490 U.S. 386, 397 (1989). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (citation and internal quotation marks omitted).

The Court looks to the totality of the circumstances in assessing whether force was reasonable. See Barnes v. Felix, 605 U.S. 73, 79 (2025). The Supreme Court has identified certain factors to consider:(1) the severity of the crime at issue, (2)

whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396 (1989). The Court also considers "the extent of the plaintiff's injury" and "any effort made by the officer to temper or to limit the amount of force[.]" Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015). While officers will not be "subject to § 1983 liability ... for every push and shove they make," Martin v. Gentile, 849 F.2d 863, 869 (4th Cir. 1988) (internal quotation marks omitted), they are also not "absolve[d]" of liability merely because "their conduct, however unreasonable, only result[ed] in de minimis injuries." Smith v. Murphy, 634 F. App'x 914, 917 (4th Cir. 2015) (citation omitted).

Here, all three Graham factors weigh in favor of Plaintiff Bunnell. The first Graham factor weighs in favor of the plaintiff when the offense at issue is a "minor one." Jones v. Buchanan, 325 F.3d 520, 528 (4th Cir. 2003); See also Hupp, 931 F.3d at 322 (finding that the first Graham factor weighed in favor of the plaintiff when the alleged crime was a violation of W. Va. Code § 61-5-17(a)). In this instance, Plaintiff Bunnell was only observed violating W. Va. Code § 61-5-17(a)), a misdemeanor under West Virginia law. ECF No. 53 at ¶ 26. Thus, factor one weighs in favor of Plaintiff.

Furthermore, there are no facts that indicate Plaintiff Bunnell was a threat to the safety of Defendant Reed or others. At the time of the incident, Plaintiff was a 5'10", 110-pound thirteen-year-old boy and Defendant Reed was 6'2" and 200 pounds. Id. at ¶¶ 7, 28. Although Plaintiff did refuse Defendant Reed's order to get inside his cruiser for questioning, no facts allege that Plaintiff made any attempt to flee or harm Defendant Reed. Id. at ¶ 26. Thus, the second factor tips in favor of Plaintiff. See Hupp, 931 F.3d at 323 (holding that a 113-pound minor who approached a 200-pound armed officer with her "arms down and hands visibly empty" did not "pose an immediate threat to the safety of the officers or others"); see also Smith v. Ray, 781 F.3d 95, 102 (4th Cir. 2015) (finding that the second Graham factor weighed in favor of the plaintiff as the defendant was "a pretty good size man" and plaintiff was "a smaller woman" who defendant had no reason to believe was armed).

The Defendant contends that the fact that two bystanders were called over to help him detain Plaintiff Bunnell is an indication that Plaintiff was a threat to him. ECF No. 60, Def's Reply at p. 11. However, the bystanders were not called over until Defendant Reed already had Plaintiff Bunnell on the ground in a headlock, laying on top of him. ECF No. 53 at ¶¶ 27-30. Prior to Defendant tackling Plaintiff, Plaintiff had not made any move to fight or flee Defendant. Id. at ¶ 26. The Fourth Circuit has previous found

that forcibly taking a "stationary individual" to the ground, when that person is only suspected of a misdemeanor is "constitutionally excessive." Livingston v. Kehagias, 803 Fed. App'x 673, 684. Therefore, this argument fails.

Finally, the third factor also weighs in favor of the Plaintiff, because his passive resistance does not constitute fleeing or resisting arrest. The Defendant alleges that Plaintiff Bunnell attempted to flee before he was ultimately tackled to the ground. ECF No. 57, Def's Motion at p. 7, 10. However, this contention does not comport with the facts as alleged in the Third Amended Complaint, which the Court must accept as true at this stage. Given that there is no indication that the Plaintiff attempted to flee, the only issue is whether he actively resisted arrest. Here, there was no active resistance, as Plaintiff only refused to get into Defendant Reed's police cruiser when asked to do so, which constitutes passive resistance. See Livingston, 803 Fed. App'x at 684 (finding that the plaintiff passively resisted by "refusing to give up his hands for handcuffs"); see also Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 901 (holding that a plaintiff's refusal to let go of a post when demanded to do so was passive resistance). Although passive resistance can constitute some use of force, the appropriate level of force depends on the underlying factual scenario. Armstrong,

810 F.3d at 901 (quoting Bryan v. MacPherson, 630 F.3d 805, 830 (9th Cir. 2010).

In this scenario, the alleged use of force was not consistent with the level of resistance Plaintiff asserted. This is a case of a thirteen-year-old boy who suffers from a vision impairment that prevented him from being able to tell that the man in plain clothes confronting him was in a police cruiser. ECF No. 53 at ¶¶ 16-17. His resistance when asked to enter this unknown vehicle by a person who had not identified himself as a police officer certainly is not a definitive indication of someone intending to flee, but of a child unsure of how to handle an intimidating situation. This level of passive resistance does not constitute Defendant Reed tackling the Plaintiff to the ground and putting him in a headlock. ECF No. 53 at ¶¶ 27-29. Therefore, given there was no attempt to flee or actively resist, the third Graham factor also falls in favor of Plaintiff Bunnell. Thus, Plaintiff Bunnell has stated a claim on which relief can be granted as to Count Two.

**1. Qualified Immunity**

Defendant Reed's defense of qualified immunity cannot be sustained regarding the Plaintiff's excessive force claim, because it is clearly established in Fourth Circuit precedent that tackling "an unarmed individual who resisted only passively and without striking at the officer, and who was suspected at most of a minor

offense" is unconstitutional. Livingston, 803 Fed. App'x at 685 (citing Rowland v. Perry, 41 F.3d 167, 103 (4th Cir. 1994)).

The most factually analogous case to the case at bar is Smith v. Ray. In this case, the Fourth Circuit found that an officer had used unreasonable force when he threw the plaintiff to the ground, put his knee in her back, and twisted her arm, when she was only suspected of a misdemeanor and passively resisted by refusing to allow him to handcuff her hands. Smith, 781 F.3d at 102-03. Similarly, Plaintiff Bunnell alleges he was thrown to the ground, and that Defendant Reed laid on top of him and put him in a headlock to the point that he "struggled to breathe," when he had only been suspected of a misdemeanor and passively resisted by refusing to enter Defendant Reed's police cruiser for questioning. ECF No. 53 at ¶¶ 26-29.

Given this clear precedent, any reasonable officer would have been on notice that the type of force Defendant Reed used was unreasonable. Thus, in light of the alleged clearly established constitutional violation, Defendant Reed's qualified immunity defense fails and his motion to dismiss regarding Count Two is **DENIED**.

**C. Defendant Reed is not entitled to statutory immunity or privilege regarding Plaintiff's Battery claim because the alleged force used was excessive under § 1983.**

In West Virginia, a person is liable for battery if (1) "he acts intending to cause a harmful or offensive contact with the

person of the other or a third person, or an imminent apprehension of such a contact," and (2) "a harmful contact with the person of the other directly or indirectly results." W. Va. Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 494 (W. Va. 2004). However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.

Generally, a law enforcement officer "engaged in an arrest is afforded a privilege that precludes a battery claim." Weigle v. Pifer, 139 F. Supp. 3d 760, 776 (S.D.W. Va. 2015) (citation omitted). "Lawful arrests are excluded from the scope of West Virginia battery," unless the force used is excessive. Pegg v. Herrnberger, 845 F.3d 112, 121 (4th Cir. 2017) (citations omitted). Under West Virginia state law:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies: (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) Liability is expressly imposed upon the employee by a provision of this code.

Id. at 775-76 (citing W. Va. Code § 29-12A-5(b)). The Supreme Court of Appeals of West Virginia has held that in the context of this statute, the terms "willful," "wanton," and "reckless" mean that

> the actor has *intentionally* done an act of an unreasonable character in disregard of a risk

> known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

Holsten v. Massey, 490 S.E.2d 864, 877 (W. Va. 1997). Public officials will be entitled to statutory immunity "unless it is shown by specific allegations that the immunity does not apply." Hutchinson v. City of Huntington, 479 S.E.2d 649, 657-58 (W. Va. 1996).

When a plaintiff fails to allege specific allegations of an exception to statutory immunity in his complaint or any court-ordered replies or motions, any state law claims against a public official should be dismissed. Id. at 660 ("A plaintiff is not required to anticipate the defense of immunity in his complaint."); See also Osborne v. Cty. Comm'n of Kanawha Cty., 2003 WL 24272906, at *7-*9 (S.D.W. Va. Sept. 29, 2003), aff'd in part, vacated in part on other grounds, 143 Fed. App'x. 554 (4th Cir. 2005) (holding that the plaintiff fulfilled the heightened pleading standard on a motion to dismiss for statutory immunity by pleading that the defendant's actions "were done with malice" and were "performed outside the scope of the[ir] authority).

**1. Statutory Immunity**

Here, Plaintiff Bunnell's common law battery claim survives because he sufficiently alleged facts that overcome the assertion of statutory immunity. In the Third Amended Complaint, Plaintiff Bunnell alleges that Defendant Reed tackled Plaintiff "la[id] his full body weight on top of Plaintiff" and kept him in a head lock to the point that he struggled to breathe. ECF No. 53 at ¶¶ 66. Furthermore, Plaintiff alleges that Defendant Reed falsely informed other officers that Plaintiff Bunnell hit him. Id. at ¶¶ 33-34. Plaintiff further pleads in his Response to Defendant's Motion to Dismiss that the above-specified actions were done "with malicious purpose and in bad faith" and in such a "wanton and reckless manner" that statutory immunity cannot be afforded. ECF No. 59 at pp. 18-19. Taking these facts as true, Plaintiff has pleaded facts that could overcome an assertion of statutory immunity through W. Va. Code § 29-12A-5(b)(2).

Furthermore, given that Defendant is not entitled to qualified immunity on Plaintiff's excessive force claim, it would be premature for this Court to provide statutory immunity for Defendant Reed based on alleged conduct violative of the U.S. Constitution.

In the absence of statutory immunity, the final issue for the Court is whether Plaintiff has sufficiently pleaded a claim for common law battery. Plaintiff Bunnell's allegation that Defendant

Reed "intentionally battered Plaintiff by tackling and restraining Plaintiff, including by laying his full body weight on top of Plaintiff, pinning Plaintiff to the ground in the parking lot, while keeping him in a head lock," is sufficient to show intent to cause harmful contact and that harmful contact did occur. ECF No. 53 at ¶ 66.

**2. Privilege**

Under West Virginia law, "a person lawfully performing an arrest is afforded a privilege to engage in arrests within the limit of their jurisdiction, so long as the force is not excessive." Pegg, 845 F.3d at 121.

Here, Defendant Reed is not entitled to qualified immunity on Plaintiff's sufficiently pled excessive force claim. Thus, the Court declines to grant Defendant Reed's defense of privilege as to Plaintiff's battery claim for the same conduct. Thus, Defendant's Motion to Dismiss is **DENIED** as to Plaintiff's Common Law Battery claim.

**D. The Defendant is entitled to both privilege and statutory immunity for Plaintiff's Assault claim in Count Three because the alleged conduct occurred during a lawful arrest.**

The Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's assault claims because Defendant Reed is entitled to the affirmative defense of privilege and statutory immunity under West Virginia Code § 29-12A-5(b). In West Virginia, a person is liable for assault if (1) "he acts intending to cause a harmful or

offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact," and (2) "the other is thereby put in such imminent apprehension." Stanley, 602 S.E.2d at 495. However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.

Plaintiff Bunnell alleges that Defendant Reed "threatened to re[s]train Plaintiff without legal justification," intending to "create an apprehension within Plaintiff of immediate physical harm," causing Plaintiff to "fe[el] threatened." ECF No. 53 at ¶¶ 64-65. These actions occurred in the course of a lawful arrest, before any force was used by Defendant Reed. Thus, Defendant Reed is entitled to privilege on Plaintiff's common law assault claim. Furthermore, Plaintiff's claim that Defendant is not entitled to statutory immunity fails because Defendant's alleged threat of detainment was lawful. Therefore, the Defendant's Motion to Dismiss is **GRANTED** as to the common law assault claim in Count Three.

## V. CONCLUSION

For the foregoing reasons, *Defendant William Reed's Motion to Dismiss the Third Amended Complaint* [ECF No. 56] is **GRANTED IN PART AND DENIED IN PART.** Count One for False Arrest is **DISMISSED** on the basis of qualified immunity. The Common Law Assault claim

within Count Three is **DISMISSED** for privilege and statutory immunity. Plaintiff's remaining claims are Count Two for Excessive Force and Count Three for Common Law Battery.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

**DATED:** September 25, 2026

Tom S Kleeh

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA